I wanted to start with the overwhelming presence of the officers at the trial, because I could be dispositive of many of the other issues. In this case, we had a number of officers whose sole purpose was to come to court to influence the jury. They had no other reason to be there, especially during opening and closing arguments. We don't know who they are, but they were misinformed by the state, and they believed that they could appear in uniform if they were on their way. So we're in AEDPA land, aren't we? Yes. Tell me what Supreme Court case, roughly on point, tells us that this was a deprivation of due process. Okay. There's a number of cases. What's your best one? Pardon me? What's your best one? The best one is, it's in my opening brief on argument C, where we have Irwin v. Dowd. There should be no... Is that a Supreme Court case? Yes. That's on page 56 of my opening brief. Irwin v. Dowd. Yes. And does that talk about... civilians who attend the trial? You're not contending that these officers attended the trial in their official capacities as officers, are you? Yes, I am. I'm arguing that they were state authorized. They were authorized by the state. What in the record supports the argument that the officers came as part of their state function, as opposed to spectators at the trial? It's the uniforms that made a difference. If they came in plain clothes, then it wouldn't really make a difference. And before trial, there was a question, it was before the court, as to whether or not they could come in uniforms. And the district attorney said, well, okay, as long as they're on their way to work or not. But that's not what the L.A. Police Department manual says. But the L.A. Police Department manual isn't the Constitution. So what we have here, correct me if I'm wrong, the district judge asks, during voir dire, the district judge, the trial judge, asks the panel during voir dire whether it would bother them or influence them one way or another if they were policing uniformly, correct? Yes. And the voir dire answers, and the jurors answer and say no. Nobody says it will influence me one way or another. So your position has to be that it is a per se violation of the due process clause to have officers in uniform in the courtroom. Well, no. It depends on why they're there, for example. Who cares why they're there? That's their subjective view. This is a case in which a police officer has been killed. Your client's a defendant. They're obviously there to provide support to the prosecution side and the victim side. There's no other way to interpret it. Is that a per se violation of the Constitution? I can't say it's per se. Well, if it's not, then what in this circumstance makes it contrary to settled Supreme Court law? Well, settled Supreme Court law, as I read it and as I read the concurring opinion in Musladin, the Musladin case, it doesn't have to be exactly, exactly on point. But there are enough cases that say that outside influences do not belong in a courtroom. That concept is very general. And the Supreme Court has warned us against characterizing the law at a high level of generality. Although there doesn't have to be a case specifically on point, that's a little general, don't you think? Well, I think that there are cases, I believe it's the Wood case that I cited, where courts have said that the overwhelming presence of officers, particularly in a case like this, does have an undue influence on the jury. So your position has to be per se then, doesn't it? I don't know. Because in this case, if it's not per se, what different steps should the trial court have taken? It did do a voir dire. It did, I think, maybe I'm wrong about this, it gave an instruction of some sort to the jury during jury selection, at least, that they shouldn't be, you know, they shouldn't be influenced by this. Am I wrong? Well, you know, actually, I don't know because I don't know which jurors stayed on and which jurors stayed off, so that would take additional briefing as to which jurors were there or not. So I can't say whether an instruction at the beginning of the case, exactly what they said, because we knew that it involved a police officer, so there was going to be a voir dire on how jurors feel about police officers. So it's hard to say whether that instruction at the end of the, would have made a difference to the jurors who remained on the panel or who were selected to be on the jury. So we don't really know. But I, but the law, established Supreme Court law does entitle you to a fair trial. I mean, that's, that's what. As Judge, Judge Rawlinson said, we keep getting in trouble with our friends in Washington. Whenever we, we say something like that, they say, tell us where we said this specifically about this situation, which is why I asked at the beginning what your best case was, and I think the case has to probably involve law enforcement officers in the room. Yes. Like I said, it depends on why they're there. If they're there for total security and the case doesn't involve a police officer, then it would be much harder to prove. Does the Irvin case say that? Irvin case. I can't remember if it's the Irvin case. I'm just wondering, I'm not even sure that Irvin case involved police officers. Yeah, that's what I was looking to find myself. Well, there's Holbrook v. Flynn, Estelle v. Williams. So we ask you for your very best case. My very best case. That involves police officers attending a trial of a fellow officer. What's your very, what's your closest analog to that scenario? Well, I think Carey v. Musladin did have some language in it, because that was not state-sponsored. Those were not state actors. Those were just people who came, who had an interest, who knew the... That was a case in which there were spectators wearing a button with a picture of the murder victim on it. Yes. That's a little different, isn't it? Well, it is a little different, but it does talk about spectators' contact. But if you look at the concurring opinion in Carey v. Musladin, they talk about general rules tend to accord courts more leeway in reaching outcomes in case-by-case determinations. ADFA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. And that's in the, it's in Kennedy's concurring opinion at page 80-81 in Musladin. And... When you finish, I wanted to ask you... Oh, no, that's... I wanted you to finish, because I wanted to ask you to address the Rhinestay issue... Yes, the Rhinestay... At some point, but I want you to finish your argument on this point. Okay. So I just wanted to say that police officers are different. They command a different sort of presence. I mean, even this circuit has said that there is an aura of veracity, especially in a highly emotional case like this where you have a number of police officers who are clearly there to influence the jury. It really does make a difference. And the state was wrong when it said you could come on your way to work. That's not what the police officers are entitled to do. The police code, the officer's manual says specifically you can't wear your uniform. You can only wear it directly to and from work. For instance, you can't stop at a restaurant on your way to work and eat, because a lot of times restaurants are very differential. You can't stop and go shopping on your way to work. You can't... He would like to hear more about the Rhinestay issue. Okay, the Rhinestay. And so would I. And so my real question is, did the magistrate exceed his or her authority in how the order denying the Rhinestay was implemented? Because then the district judge didn't have to address it. Does that make sense? Yes, yes. I understand. And the prosecution, the people brought that up in their reply brief. Lucky for you. Yes. Yes. Because you forgot to bring it up. I know. I take responsibility. So in the Rhinestay, yes, the magistrate did not have the authority to issue a stay like that. Why not? Why? Because it's a magistrate. It's a definitive order. It's potentially dispositive. Yes. So let's assume you're right. Okay. And that the Rhinestay was improperly denied by the magistrate judge. Yes. The magistrate judge didn't have jurisdiction to do so. Yes. What do we do? Well, we have to send it back, I think, for determination by the district court. Or I believe that this court can make a determination also. On the Rhinestay? On the Rhinestay. In the first instance? Sure, why not? Perhaps because we don't know enough? No. And to turn on facts that we don't have in front of us, like reasonable diligence. Well, reasonable diligence is certainly not. We don't know whether there was reasonable diligence or not because we don't have a record on which to decide it, do we? Well, see, here's my concern about what happened with this Rhinestay. I went over the pleadings, and as a result of the failure to give Mr. Sadowski, give us the Rhinestay, it took an additional, I counted, about 25 additional pleadings. So one of the purposes of Rhines, you know, we want to – No, but let's assume that the – let's assume the magistrate judge had no jurisdiction. So the denial of the Rhinestay is, what do they say, void admonitio or something like that? Yes. What do we do? I mean, you say, well, we could decide it ourselves. That's one option. Another option is to send it back to the district court to decide. Yes. Is there any other option in your view? Well, I could think about it for a minute. Well, you can think about it while you're saving your time for rebuttal. Thank you. I will do that. All right. Thank you, counsel. A few minutes left. Thank you. Good morning, Your Honors. May it please the Court. Deputy Attorney General Dana Muhammad Ali on behalf of Respondent. I'd like to turn to the Rhinestay issue first. Here the magistrate judge properly denied Mr. Sadowski's stay request and did not exceed his authority because that denial order at the time that it was issued was not dispositive within the meaning of the statute. Well, but it was potentially dispositive. After all, if it was dispositive, it would have meant the unexhausted claims were no good. So when we say potentially dispositive, what we mean is that the order has the potential of being dispositive in the case, and surely it did here. It turned out to be dispositive. Well, Your Honor, what Mitchell says is that the general rule is that when a magistrate judge denies a Rhinestay, that order will generally but not always be dispositive. So this potential language, I think, is not contemplated by Mitchell. Because it won't matter if in time the habeas petition gets amended and there's no problem. So it won't be dispositive in those circumstances. Right, Your Honor. But it's surely dispositive here. It's the exact reason why Mr. Sadowski's unexhausted claims were dismissed. Well, Your Honor, I would take issue with that. Because in this case, we have to look at the time that the magistrate judge actually denies the Rhinestay. So, for example, in Mitchell, when the magistrate judge denied the Rhinestay in that case, the state conceded that that forever foreclosed Mitchell from ever returning to federal court with his unexhausted claims that he had to dismiss. Yeah, but what do we do with the words potentially? See, I'd agree with you if our case law said dispositive. But our case law says a magistrate judge lacks the ability to deny a Rhinestay when that denial would be potentially dispositive. Again, Your Honor, I don't know that the potential that word necessarily is contemplated by Mitchell. I think the language is that the rule is that a magistrate judge's denial of a Rhinestay will generally, generally, but not always be dispositive. And so I'm not proposing that this court adopt a new rule. I'm reading from Rhines. Rhines says it's an abuse of discretion to deny a Rhinestay when the petitioner had good cause. His unexhausted claims are potentially meritorious. Right. And there's no indication that he engaged in intentionally dilatory tactics. Correct. So do we have to go back and find whether his claims were potentially meritorious? No, you do not, Your Honor. So here, when we're looking at the issue of whether the magistrate judge exceeded his authority within the meaning of Mitchell and Section 636, we look to whether the denial order was dispositive at the time that the magistrate judge issued the denial order. What language are you relying upon to say that we look to see whether or not it was dispositive at the time? What language are you relying upon?  Well, unfortunately, there's Mitchell and there's Bastidas and not much other case law interpreting those cases because, of course, after those cases came down, magistrate judges knew that they should issue reports and recommendations if there were to deny a Rhinestay. So if it's not clear, shouldn't we revert to the default that's generally considered to be dispositive? Why don't we revert to that language? Well, Your Honor, I'm not saying that you shouldn't revert to that language. And, again, the rule is that an order such as this one is generally dispositive. However, in Mitchell, there was a footnote that said that there were circumstances contemplated that would potentially make an order not dispositive. And here, what we're saying is that looking at the facts of this case where Mr. Sadowski was represented by counsel, where counsel knew there were six days left on the statute of limitations, where counsel was able to come back and Mr. Sadowski was able to come back to federal court, file a second amended petition containing the newly exhausted claims that was timely, then such an order by the magistrate judge was not dispositive. So we're saying that based on... So your view is that if there's any time left on the statute of limitations, the denial of a Rhinestay is not dispositive? Not always, Your Honor, based on the facts of the case. Right. So how would... See, one of the difficulties I'm having is we need to look at the magistrate judge's jurisdiction at the time he exercises it. Yes. Rather than wait till later and see if it turns out that it didn't matter. And so your test would have us wait until later and see whether or not the petitioner could have filed a timely petition to determine whether the magistrate judge had jurisdiction a year earlier or two years earlier to enter an order. Well, not necessarily, Your Honor, because again, looking at the time that this Rhinestay was denied, there were still six days left on the statute of limitations. And so at the time the magistrate judge says, I'm... And here it was... Well, that's why I asked you the question. So... Right. Your answer to the first question was no, and that's why I asked you the second one. So your position is that if there's any time left on the statute of limitations at the time that the judge denies the Rhinestay, then it's not dispositive. It's not potentially dispositive. Right. It's not... Yes, it's not... Yes. On the facts, that's one of the facts to consider. So here, Mr. Sadowski still had the possibility of returning to federal court to file a timely petition. But again, looking at the facts of this case, Mr. Sadowski was represented by counsel. The second amended petition... Well, but his representation by counsel doesn't confer jurisdiction where it didn't exist before. We're talking about whether the magistrate judge has jurisdiction, not whether the guy has a good lawyer, good lawyer, or a bad lawyer. I understand, Your Honor. So I'm trying to hone in on your position. You may be right, but I want to understand it. Your position is that if there's time left on the statute of limitations, then denial of a Rhinestay is not dispositive. Yes, that's one of the factors. That certainly is a strong factor in favor... Well, tell me what other factor is your test. I want to understand your test. Well, again, there isn't really a test that I'm proposing here. I'm staying on the facts of this case. So I am agreeing with Mitchell's rule that an order by a magistrate judge denying a Rhinestay is generally dispositive. What I'm doing is that I'm providing facts on the facts of this case. Well, I'm trying to be a magistrate judge for a second, a diligent magistrate judge. And you come to me and say, the other side comes to me and says, I want a Rhinestay. And I say to myself, do I have the power to order this or can I just recommend it to the district judge? And what you seem to be saying is that as long as the statute of limitations hasn't already run, I have the power to order it. Well, because it's... You're resisting, but that's what you're saying, isn't it? I'm not resisting, Your Honor. It's just that when I think of the word dispositive, to me that means that I am foreclosed from coming back to federal court to get relief on any claim that was dismissed as a part of the denial of the Rhinestay. So here, because there was time, there was the possibility of returning to federal court. But you seem to be giving a long and learned answer to my question, which is yes. Yes, Your Honor. I apologize for resisting it. But I guess for me, the issue is that at the time the magistrate judge denies the request for a Rhinestay, there's time left on the statute of limitations. And there was more here in this case that in addition that Mr. Sadowski was represented by counsel and that it was possible for him to return to court to get relief on his newly exhausted claims that were dismissed as a part of the Kelly stay that was granted. Let's assume, just for purposes of argument, that we conclude the magistrate judge didn't have jurisdiction to deny the Rhinestay. The same question I asked your colleague. What do we do? So Mitchell says that you should remand for the district court to basically rule upon. Determine post hoc whether it would have been. Exactly. However, I will submit that in this case, the magistrate judge did eventually issue a report and recommendation. This is the report. And I've read it. But the report and recommendation doesn't say, doesn't ask the judge. In other words, the report and recommendation said, I recommend that you grant a Rhinestay, Judge. Right, right. It really does. The judge never ruled on the Rhinestay. Well, the judge never explicitly ruled on the Rhinestay. However, in this report and recommendation, that was tied directly to. The judge knew there was a Rhinestay from the report and recommendation. Yes, exactly. And the denial of the Rhinestay and the granting of the Kelley stay was directly related to whether the claims in the second amended petition were timely or not. So all of that was tied together. Did the district judge ever directly address good cause? No. And in fact, the magistrate judge never directly addressed good cause. Does that mean we have to send it back? Not necessarily, Your Honor. Because here we can look to what the district court judge did when it got this report and recommendation. The district court judge didn't just rubber stamp this report and recommendation. The district court judge made 43 different amendments to the report and recommendation. But none as to the stay issue. See, that's the. If I thought that the district judge had somehow implicitly said, good job on the Rhinestay. Right. And good job on the Kelley stay. It might be a different case. But I think the district judge took that as a given. I denied a Rhinestay. They dismissed the unexhausted claims under the Kelley stay. And so, Judge, all you have in front of you are the exhausted claims. Right. And the judge then deals with them all. So, again, I would say that the district court judge never directly addressed the propriety of denying a Rhinestay, whether there was good cause, but implicitly accepted the fact that it was proper to deny a Rhinestay in this situation when he found that the claims that did not relate back were actually untimely and therefore should be dismissed. And to be fair to you, you appear to be the only party in this whole case, judges and lawyers, who ever noticed the Rhinestay issue. So if we're giving you a hard time, you created your own difficulty.  It's my own fault. Why not? Well, because, Your Honor, it's our duty to bring up issues that are directly on point to the certified issues here. And so, obviously, here, this was in a situation where the magistrate judge issued this denial state after Mitchell came out. This guidance came out a couple of years after the matter, or maybe one year after, or sorry, one year before the decision in Mitchell was decided. I commend you on your integrity. Thank you, Your Honor. And so moving... We've used up a lot of your time on the Rhinestay, and I know you wanted to talk about... Oh, yes. ...the merits issue that your colleague raised. Yes. Could you address that? Thank you, Your Honor. So as far as the presence of the uniformed officers here, the district court properly found that the California Court of Appeal reasonably rejected this claim. Number one, there is no clearly established Supreme Court precedent that says that private spectator conduct could rise to the level of a due process violation. Well, what if the police had all worn buttons with a picture of their deceased colleague? Would that be a due process violation? No, Your Honor, because, again, these are private spectators. This is not state-sponsored activity. Merely because they are police officers does not mean that the state is sponsoring this activity. Well, what do you do with the Supreme Court case that your colleague relies on that does involve people wearing buttons? Well, that case, Your Honor, Carrie explicitly says that the Supreme Court has never addressed the issue of whether private spectator conduct could rise to the level of a due process violation. Does the wearing of the uniforms equate to a button? Does that send a similar message? It may, Your Honor. And if it does, then it still does not rise to the level of a due process violation because, again, this is a private spectator, whether they're a police officer or not. But the private spectators all wore T-shirts that said, Convict Sadowski. Right. And the trial judge were negligent enough to let them remain. Would that be a due process violation, even though they were not state actors? Well, I would say no, again, because in this case, if we're working within the confines of AEDPA, there is no clearly established Supreme Court precedent that says private spectator conduct could rise to the level of a due process violation. You don't have to go that far in this case, do you? You do not have to go that far in this case. And that's because the record is unclear as to how many officers were actually present during trial. I think there was some evidence that there were some uniformed officers present at some point during trial. I believe the trial court judge stated that he did see officers at least during opening statements and closing arguments. But otherwise, there was no clear record as to how many officers were there. But in any event, the presence of officers did not prejudice Petitioner in this case because the jury returned a verdict where they found not true the allegation that the murder was premeditated, willful, and deliberate, and further, a not true allegation on whether Mr. Sadowski knew that the victim was a peace officer. So there was no prejudice to Mr. Sadowski from the presence of any uniformed officers in this case. The district court properly denied relief in this case, and accordingly, Respondent respectfully requests that the district court judgment be affirmed. Thank you, counsel. Thank you. Rebuttal. Good morning. I did want to point out in my reply brief on pages 32 to 33, there are a number of cases dealing with outside influences affecting the jury. And then Kerry v. Musladin deals with private spectators. But it really, it's similar here that because the officers were state actors, they're paid by the state, they were wearing state-issued uniforms. The nature of the case involved a police officer. They came during critical periods of time. So you have to, I don't know how the prosecution could say they were private, they were just spectators. They were there for a reason. And then again, just... There's no evidence here, though, that they were, that the police department organized this observance. In other words, that a captain said to all of his squad, today you're ordered to go to court to give support to the prosecution. No, but they were in touch with the prosecutor of the case who gave them, who allowed them to do this. In other words, they asked first. And the district attorney said she checked, and it's okay if they're on their way to and from work. So she authorized that. So that's why it was authorized by the state. And the state was wrong, because they're not allowed to, according to their own manual. But I did want to get to the point where, look, I mean, are we going to... When we get to say, okay, they can wear buttons about the victims, and other people can wear buttons about the defendants, and everybody's going to be wearing all these, you know, like rallies or something, that's really not what a courtroom is about. So that's the concern. I mean, if you have a few people, maybe the victim's mother, like in Kerry v. Muslin, and maybe, or whoever. But then again, you're going to start this, it's going to be like a rally, you know, what's to stop them from holding up signs or whatever. It really does make a difference to a jury. Juries want all these things. They're very perceptive about what goes on in the courtroom. So that's why, that's mainly our concern. So you bring in officers, and you bring in the family, family's going to do stuff, and then, like I said, it's going to turn into some sort of rally to influence the jury. And then, just in terms of the reinstay, one of the things that I think we found confusing was the fact that the magistrate himself assumed the authority of the definitive word. He didn't send it up like he's supposed to. Well, to be fair to the magistrate, at the time, Mitchell hadn't been yet decided. And so he didn't have any instruction from us that he didn't have that power. Okay, but I think that, I think this court could decide, make a dispositive ruling, only because it was fully briefed. If this court says no, and it has to go back, and the court says no, then we're back here again. So it becomes, again, more time-consuming, and we're dealing with the same issues all over again, which were fully briefed here. So that would be one reason why the court could make the decision. Counsel, thank you. You've exceeded your time. Thank you to both counsels. This case is submitted for decision by the court.
judges: Rawlinson, Hurwitz, Bough